THE PRESIDENT, DIRECTORS, &C. OF THE WESTERN BANK *vs* JOHN MILLS. THE SAME *vs.* GEORGE DWIGHT & another

A bank agreed with D. to discount his paper, indorsed by M., to a certain amount, and that D. should leave with them, on deposit, one sixth of the several discounts; and D. agreed to give them the first offer of all his business; and it was also agreed, that either party might terminate the arrangement by giving ninety days' notice to the other. After obtaining some discounts, D. informed the bank that he should extend his discount to the full amount, and gave them a check for a sixth part of said amount, and received of the bank a certificate of deposit thereof, payable after ninety days' notice of his desire to withdraw it. D. took the benefit of the insolvent law; and M. gave his notes to the bank in renewal of the notes of D., on which he was indorser, the bank agreeing to prove the notes of D. against his estate in insolvency, and to apply the proceeds towards the payment of M.'s notes. It was held, that the entire proceeds of the discount not being payable by the bank on demand, the discount was so far void, under Rev. Sts. *c.* 36, § 58, that the bank could not prove the notes of D. against his estate; nor maintain an action against M., on his notes given in renewal of the notes of D.

THE first of these cases was an action of assumpsit to recover the amount of three promissory notes, signed by the

defendant, dated the 21st of June, 1850, and payable to the order of C. P. Bissell, the plaintiffs' cashier; one for $2,000, and two for $1,500 each; and payable in four months, from the 19th of June, the 25th of June, and the 14th of July, 1850, respectively.

The defendant pleaded the general issue, with a specification of defence, which stated, in substance, that the notes in suit were given in renewal of, or as a collateral security for, certain notes for similar amounts, and which fell due on the 19th and 25th of June, and the 14th of July, 1850, respectively, signed by the firm of Dean, Packard & Mills, (who had become insolvent since giving those notes,) and indorsed by the defendant, and discounted by the plaintiffs under an agreement made by them with said firm, which agreement was usurious, illegal and void, as being made in violation of the laws of this commonwealth; that there was no other consideration for the notes sued upon; that, at the time of making them, it was agreed between the parties to this suit, that the plaintiffs should prove the notes of Dean, Packard & Mills against their estate before the commissioner of insolvency, and apply the proceeds towards the payment of the defendant's notes; that the notes of said firm were offered for proof accordingly, but were disallowed by the commissioner, because made in violation of the laws of this commonwealth.

At the trial, the following facts appeared in evidence, by the testimony of Isaac Mills, called as a witness for the defendant: In the early part of October, 1849, an arrangement was made by the plaintiffs with the firm of Dean, Packard & Mills, whereby the latter agreed to open an account with the plaintiffs, who, on their part, agreed that the bank should give said firm a line of discount on their accommodation notes, indorsed by the defendant, not exceeding $18,000; that Dean, Packard & Mills should do their business at said bank, and give the bank the first offer of all their business paper; that, for every $6,000 of such accommodation paper discounted by the bank, Dean, Packard & Mills should leave on deposit $1,000, being one sixth part of the amount discounted; and that collateral

security should be left with the bank for one half of the amount of the loan; and it was further agreed, that either party might terminate this arrangement, by giving ninety days' notice of their intention to the other. And, in accordance with this arrangement, the said firm deposited with the plaintiffs, as collateral security, sundry bonds, stocks and notes, some of which were furnished them by the defendant for that purpose. Among the securities, so furnished by the defendant, were certain notes of David R. Adams and of Eli G. Noble.

On the 15th of October, 1849, Dean, Packard & Mills's note for $7,596, indorsed by the defendant, was discounted under this arrangement, and the proceeds placed to their credit, and some part of it immediately drawn out by their checks. On the 27th of October, the plaintiffs' cashier inquired of Isaac Mills, who managed the financial affairs of the said firm, how far they intended to extend the line of discount. I. Mills replied, that they should take to the amount of the $18,000. The cashier then proposed, that Dean, Packard & Mills should give the plaintiffs a check for $3,000, and he would give them a certificate of the same. I. Mills consented to this proposition, remarking, at the same time, that the bank would be getting the full benefit of the $3,000 before the whole of the $18,000 was discounted. He however gave a check to the cashier, and received a certificate of deposit, in the following words: " Western Bank, Springfield, Mass., 27 Oct. 1849. Messrs. Dean, Packard & Mills have deposited in this bank three thousand dollars to the credit of themselves, payable on the return of this certificate satisfactorily indorsed, after ninety days' notice of desire to withdraw the said $3,000. C. P. Bissell, Cashier." And it was agreed that this deposit of $3,000 should constitute a part of the collateral security to be given under the original arrangement; and it remained in the bank till the failure of Dean, Packard & Mills.

Isaac Mills also testified, that within a short time after giving the check for $3,000, he got discounted, by the plaintiffs, accommodation notes of his firm, indorsed by the defendant, amounting, including the discount of the 15th of October

to $18,000; that these notes were renewed or paid, from time to time, as they became payable; and that Dean, Packard & Mills, after said arrangement was made, never gave the plaintiffs any notes indorsed. by the defendant, except those discounted under this arrangement, or in renewal of those so discounted; and that whenever said firm had any note so discounted or renewed by the plaintiffs, they gave the plaintiffs a check for the amount of the note, in accordance with a rule at the bank; that during the time said firm were transacting business with the bank under said arrangement, on two occasions, they drew checks on the bank for less than $600, which the bank refused to pay for want of funds; that at the time one of these checks was refused, said firm had, in addition to the $3,000 then on deposit, funds in the bank sufficient to meet the check, but the check was refused in consequence of the omission of a clerk to place to their credit a sum deposited on the morning of that day; and on the other occasion, the balance of their account, in addition to the $3,000 there on deposit, was not sufficient, by about seven dollars, to pay the check refused.

The agreement made with the cashier, and all his acts under that agreement, were made with the approbation of the directors of the bank. Isaac Mills further stated, that he informed the present defendant of the terms of the arrangements which he could make with the bank, and consulted him about it, and he supposed the defendant knew that the notes he was indorsing from time to time, were given under that arrangement.

On the 27th of May, 1850, the bank gave Dean, Packard & Mills written notice that the arrangement between them and the bank must cease at " the earliest practicable moment." Dean, Packard & Mills failed on the last day of said May, and went into insolvency on the 3d of June following. At the time of their failure, the bank held their accommodation paper indorsed by the defendant, given under the aforesaid arrangement, to the amount of $18,000, $5,000 of which was in notes of the dates, sums and times of payment, mentioned in the specification of defence. On the morning of the day

of the failure, the plaintiffs' cashier called at the office of Dean, Packard & Mills, and obtained from Mills the certificate of the $3,000 deposit, which he afterwards applied to cancel two of the notes of said firm, not then payable.

The defendant, on the 7th of June, 1850, executed a mortgage of certain real estate to the plaintiffs, as security for his indorsement of the notes of Dean, Packard & Mills; on the 14th of the same month, he addressed a letter to the president of the bank, offering different security; and on the 17th of June, 1850, the defendant conveyed certain real estate to three trustees, to hold as security for his liability to the plaintiffs on said indorsements, and as security for his liabilities to sundry other parties.

On the 21st of June, 1850, the defendant signed and delivered to the plaintiffs a paper, of which the following is a copy: " In consideration that I am responsible to the Western Bank, as the indorser of Dean, Packard & Mills, I make the following propositions to said bank : That I will give my own notes for those I have indorsed, payable in four months from the time Dean, Packard & Mills's notes become payable; the same to be renewed for one half the amount, payable in three months from the time they become payable; the interest to be paid as on notes discounted. Said bank are to make sale of the collateral security held from Dean, Packard & Mills, and apply the same in part payment of my notes first mentioned. Said bank shall present and prove before the commissioner of insolvency the balance of the notes against Dean, Packard & Mills, and receive the dividends when made; the amount to be applied on my notes aforesaid. Said bank shall apply the collateral security, held from myself, upon my notes aforesaid, the same to be converted into cash, before there shall be a failure on my part to meet said notes as they become due, unless I can sell the same, or it shall be done by my trustees. In case said collateral security and the dividends aforesaid shall be insufficient to pay my notes aforesaid, as they become payable, then my trustees, to whom I have conveyed certain real estate, are to make sale of the same for cash, and pay my notes aforesaid. I hereby agree

to waive all my right to demand and notice upon all the notes I have indorsed for Dean, Packard & Mills, at the Western Bank. I am to withdraw the notes of D. R. Adams and Eli G. Noble from the bank. June 21, 1850. John Mills." The proposals made in this paper were accepted by the plaintiffs; and on the same day, the defendant executed and delivered to them, in accordance with his said proposals, twelve promissory notes, corresponding in amounts with those notes (twelve in number) of Dean, Packard & Mills, in the hands of the plaintiffs at the time of the failure of said firm, which were not cancelled by the application of the certificate of deposit of $3000, and payable four months from the times when the said twelve notes became due respectively. And the defendant, pursuant to the agreement in the paper of the 21st of June, afterwards withdrew from the bank the notes of Adams and Noble.

The plaintiffs, on the 6th of July, discharged the mortgage of the 7th of June; and on the 16th of July sold, under an order of the commissioner of insolvency, certain collateral security delivered to them by Dean, Packard & Mills, under the arrangement of October, 1849, and applied the proceeds in payment of four of the twelve notes, amounting to $3,400. There are now in the possession of the plaintiffs, eight notes of Dean, Packard & Mills, indorsed by the defendant, and given under said arrangement, and amounting to the sum of $11,600; and the plaintiffs also hold the notes of the defendant of corresponding amounts, given in accordance with his proposal of the 21st of June, three of which are the notes in suit.

On the 30th of November, 1850, several of the principal creditors of Dean, Packard & Mills requested George Dwight and Edward A. Morris, the assignees of said firm, to object to the proof of the notes of the firm, held by the Western Bank, if they should be offered for proof before the commissioner. The defendant did not join in this request, nor was there any evidence in the case that he did any thing to prevent the proof of the notes. On the 10th of December, 1850, the plaintiffs presented said notes to the commissioner for proof. The assignees objected to the allowance thereof; and the

commissioner, on the 16th of December, after hearing the parties, decided against the proof of the notes, on the ground that they were given under an agreement in violation of the laws of the commonwealth. From this decision the plaintiffs appealed, and that appeal is the second case above named, in which case also, the foregoing facts appeared in evidence.

It further appeared, in the first named case, by the testimony of the attorney of the bank, that he, on the 9th of December, 1850, before presenting the notes to the commissioner, and also on the 16th of December, after the decision of the commissioner had been made, offered the notes of Dean, Packard & Mills to the defendant to prove before the commissioner; but the defendant refused to receive them. The witness did not recollect the reasons given by the defendant for refusing to receive the notes, but he believed something was said about the bank having agreed to prove the notes before the commissioner. The defendant then told the witness, that if these notes were not proved, he should not pay the notes he had given to the bank.

These cases were argued together by *S. Bartlett* and *G. Ashmun*, for the Western Bank, by *W. G. Bates* and *H. Vose*, for Mills, and by *H. Morris* and *H. Vose*, for Dwight and another.

METCALF, J. The fifty eighth section of *c.* 36 of the revised statutes is in these words: " No bank shall directly or indirectly make any loan, or grant any discount, unless the amount of the loan or the proceeds of the discount shall be payable by the bank, on demand, in specie, or in the bills of the bank; and every loan or discount, made contrary to the provisions of this section, shall be so far void, that the bank shall not be enabled to recover the amount thereof from the borrower, or from any other person; and every bank, offending against the provisions of this section, shall moreover forfeit the sum of five hundred dollars." Applying these provisions to the facts in the first of these cases, it is clear that the plaintiffs cannot recover on the notes in suit. The agreement between them and Dean, Packard & Mills, was, that the plaintiffs should discount their paper, to an amount not exceeding eighteen thousand dollars, and that they should leave in the bank, on

46*

deposit, one sixth of the several discounts. On the 15th of October, 1849, the plaintiffs discounted a note of $7,596, " under this arrangement." Twelve days afterwards, Dean, Packard & Mills informed the plaintiffs' cashier, that they should extend their discount to the full sum of eighteen thousand dollars, and gave the plaintiffs, at their cashier's suggestion, a check for one sixth of that amount, to wit, three thousand dollars, (probably a part of the former discount which had not been drawn out,) and the plaintiffs gave to them a certificate that they had deposited that sum, which was made payable after ninety days' notice of their desire to withdraw it. Discounts were soon after made by the plaintiffs, which made up the amount of eighteen thousand dollars. And the notes in suit were given in renewal of notes that had been discounted under the foregoing arrangement. The proceeds of the discounts were not made " payable by the bank on demand," but a part of those proceeds were put out of the control of the borrowers, and reserved for the use of the bank. The plaintiffs received interest on eighteen thousand dollars, of which the borrowers never had but fifteen thousand.

The arrangement made with the plaintiffs, by the defendant, on the 21st of June, 1850, when the notes in suit were dated, did not purge the discounts from their original taint, nor impair his right to make this defence. *Wynne* v. *Callander*, 1 Russell, 293; *Amory* v. *Meryweather*, 4 Dowl. & Ryl. 86, and 2 Barn. & Cres. 573.

In the first of these cases, there must be

*Judgment for the defendant.*

In the second of these cases, the same reasons that prevent the plaintiffs from recovering against Mills justify the commissioner of insolvency in his disallowance of their claim against the estate of Dean, Packard & Mills.

*Order of the commissioner affirmed.*